**Bob FREELS, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–12492.**

Criminal Court of Appeals of Oklahoma.

Jan. 15, 1958.

Rehearing Denied Jan. 29, 1958.

Ralph Myers, Jr., El Reno, for plaintiff in error.

NIX, Judge.

Bob Freels, hereinafter referred to as the defendant, was charged by information in the District Court of Canadian County, tried before a jury, found guilty of attempted rape. The jury could not agree upon the punishment and the trial judge sentenced the defendant to serve 15 years in the state penitentiary.

The charging part of the information upon which the defendant was tried read as follows:

"* * * on or about the 6th day of April, in the year of our Lord, One Thousand Nine Hundred Fifty-six, at and within the said County and State, willfully, unlawfully and feloniously commit the crime of Rape in the First Degree, in the manner and form as follows, to-wit: That the said defendant, then and there being, did then and there willfully, unlawfully, and feloniously carnally know and have sexual intercourse with one Joan Davis, a female person, and not the wife of him, the said Bob Freels, the said Joan Davis being then and there under the

age of fourteen years, to-wit: Twelve years of age, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State * * *."

The appeal was lodged in this court on the 20th day of May, 1957. No brief was filed within the time prescribed by law and no extension of time requested. This cause was set for oral argument on September 4, 1957. No appearance was made in behalf of the defendant.

This court has consistently held to the rule as expressed in Hulsey v. State, 82 Okl.Cr. 332, 169 P.2d 771:

> "Where the defendant appeals from a judgment of conviction and no briefs are filed, nor argument presented, this court will examine the evidence and ascertain if it supports the verdict, and will make an examination of the information, instructions excepted to, and the judgment, and if no material error is apparent, the judgment will be affirmed."

Dodge v. State, 78 Okl.Cr. 100, 144 P.2d 124; Epps v. State, 69 Okl.Cr. 460, 104 P.2d 262; Hiett v. State, 75 Okl.Cr. 190, 129 P.2d 866.

This court has gone further as to say in Barefield v. State, 26 Okl.Cr. 274, 223 P. 408:

> "The time for filing a brief supporting the appeal has passed, and, no briefs having been filed, it may be assumed that the appeal has been abandoned. The cause has been regularly submitted on the record, which has been examined disclosing no error."

The record and petition in error have been carefully examined by the court. It appears from the record that the defendant and two companions went to the home of the prosecutrix and invited her to go with them to get a coke. A controversy appears in the record as to whether the prosecuting witness went of her own volition or whether she was pulled into the car by one of the defendant's companions. The defendant contended she went willingly.

Witness said she was pulled into the car. It is conceded that considerable drinking was thereafter done by all parties, including the 12 year old prosecuting witness. A number of places were visited where beer and whisky was purchased and drank by all the parties. Another companion was picked up at one of the places visited. They proceeded to a woodland area in Canadian County where witness complains she was raped.

"A. After we got there Bob Freels, Gene Ring and Henry Ring got out of the car, and Jackie Jones tried having intercourse, but I wouldn't let him.

"Q. You wouldn't let him? A. No.

"Q. How did you resist him? A. I kept asking him to take me home and telling him that I wanted my mother.

"Q. You didn't answer my question. How did you resist him? A. I just flat came out and told him he couldn't.

"Q. You just said 'No'; is that all? A. I said 'no' and I backed up my actions.

"Q. How did you back them up? A. He tried and I hit him.

"Q. Where did you hit him? A. In the face.

"Q. Did you attempt to scratch him in any way? A. I don't remember whether I tried to scratch him.

"Q. Did you use your fingernails in any way? A. I don't know.

"Q. Is that all you did was just slap him? A. I did.

"Q. Just once? A. Yes.

"Q. Was that all the resistance you put up? A. He didn't try anything after that.

"Q. Ma'am? A. He didn't try anything after that.

"Q. But you didn't use your fingernails on him? A. I don't think so.

"Q. How long was Jackie in the car with you? A. About five minutes.

"Q. How far had he attempted to go with you to have sex relations with you? A. He had tried lifting my skirt.

"Q. Is that all the farther he went? A. That's all the farther he went.

"Q. Did he kiss you at any time during that time, or do you know? A. I don't think so.

"Q. Then what happened? You said he was there about five minutes. What happened then? A. Bob Freels and Gene Ring came and pulled him out of the car.

"Q. Pulled him out of the car? A. They took hold of him and took him out of the car.

"Q. Was there anything said? A. They told him that he had had enough time; for him to go away.

"Q. Then did he get out of the car? A. He did.

"Q. Then what happened? A. Bob Freels and Gene Ring got in the car.

"Q. Both of them got in at the same time? A. Well, Bob Freels got in first and then Gene Ring went around and opened the other door and got in.

"Q. And you were in the back seat at this time; is that right? A. Yes.

"Q. Which one got in the back seat? A. Both of them.

"Q. Had you at any time before this tried to get away from them? A. No.

"Q. When Gene and Bob got in the back seat what took place then? A. Bob Freels took my skirt and slips and underclothes off and Gene Ring held me down while he did.

"Q. Did you make any resistance while they were doing that? A. Yes.

"Q. What kind of resistance did you make? A. I fought, I hit them, and I think I scratched at them."

A signed statement made by the defendant previous to the trial was introduced which in part read as follows:

"Jackie Jones was alone with her for a while, and Gene Ring and I asked * * * and I went and asked him how he was making out. He said, "No good." So Gene and I got into the car and helped her off with her clothes. She was not fighting. Seemed not to mind, I guess. I know she was too drunk to realize exactly what was going on. So after she had her clothes off, I left and Gene was with her, and then I went in and then Henry Ring. * * *."

However, the defendant testified at the trial as follows:

" * * * After you got to the car then what happened? A. Well, we got in and Gene proceeded to take her clothes off and I helped him.

"Q. Did you help take her clothes off? A. Yes, sir.

"Q. Were you or Gene Ring holding her in any way? A. Gene had a hold of her hands.

"Q. Were you forcing her to take off her clothes? A. No; she didn't seem to care too much.

"Q. Did you observe her condition at that time? A. Yes.

"Q. What was her condition? A. Oh, she wasn't real drunk, but pretty * * * pretty drunk.

"Was she talking coherently? A. Yes, she was. She mumbled something about she wanted her jacket back. She kept hollering she wanted the jacket.

"Q. Then did you and Gene take all of her clothes off? A. Yes.

"Q. Did she put up any kind of resistance to that? A. No.

"Q. Did she ask you not to do it? A. Oh, she said 'don't' once or twice, but she * * * she, I don't believe she knew exactly what was going on. She was so stupid. She was just (waving arms), you might say 'dopeyfied.'

"Q. After you and Gene got her clothes off, what happened? A. Gene

Ring got out of the car, and I was attempting to have intercourse with her, but just as he stepped out of the car Henry come up, or somebody, and I heard a scuffle out there, and I was attempting to have intercourse with her and was going to, but in all that confusion I just * * * (pause)."

The testimony was uncontradictive as to the prosecuting witness being 12 years of age. The defendant was married, 27 years of age, and had two children. The jury gave the defendant the benefit of the doubt by finding him guilty of attempted rape, rather than rape in the first degree. They left the punishment to the court who assessed the defendant's penalty at 15 years in the state penitentiary. The defendant was adequately represented at trial by counsel and the record reflects he had a fair and impartial trial, and we find no error that would justify a reversal.

BRETT, P. J., and POWELL, J., concur.